J-A31004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DANIEL A. BERGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMCAST CORPORATION | : | No. 73 EDA 2017 |

Appeal from the Order Entered December 8, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  April Term, 2016 No. 01854

BEFORE:   PANELLA, J., OLSON, J., and STEVENS[*], P.J.E.

MEMORANDUM BY PANELLA, J.                **FILED SEPTEMBER 04, 2018**

Daniel Berger, Esquire, appeals from the order denying his petition to open a judgment of *non pros*.[1] Berger contends the trial court erroneously applied our Rules of Civil Procedure in denying his petition to open. The court held that Berger was required to file a complaint while he was seeking pre-complaint discovery. As we conclude Berger was entitled to proper discovery

---

[*] Former Justice specially assigned to the Superior Court.

[1] "[A] *non pros* is a judgment entered by the trial court which terminates a plaintiff's action due to the failure to properly and/or promptly prosecute a case." ***Dombrowski v. Cherkassky***, 691 A.2d 976, 977 (Pa. Super. 1997) (citing Pa.R.C.P. 218).

before he filed his complaint, his petition satisfied the requirements of Pa.R.C.P. 3051. We therefore reverse and remand for further proceedings.[2]

Berger filed a writ of summons notifying Appellee, Comcast Corporation,[3] that he intended to file suit. Berger subsequently served Comcast with written interrogatories for the purpose of pre-complaint discovery. Shortly thereafter, Comcast provided its responses to the interrogatories.

Berger was not satisfied by Comcast's response, and requested further clarification. Instead, Comcast filed a praecipe for a rule to file a complaint. Berger responded to the rule by filing a document entitled "Plaintiff's Response to Defendant's Rule to File Complaint by Way of Motion to Compel Pre Complaint Discovery and Motion for Sanctions in Lieu of Filing a Complaint."

_____

[2] Berger has also applied for a prohibition ancillary to this appeal. Specifically, Berger requests we enter an order prohibiting the "general practice of [courts of common pleas] (either by order of court or by action of the Prothonotary or judicial support staff) of entering a judgment of *non pros* on praecipe pursuant to [Pa.R.C.P.] 1037(a) against any … [p]laintiff that has elected to commence an action by writ of summons and seeks to conduct pre[-]complaint discovery prior to being afforded the opportunity to do so." (italics supplied). We deny Berger's application, as we have no evidence of this "general practice."

[3] Appellee asserts its proper name is Comcast Cable Communications Management, LLC. For continuity's sake, we will use the name contained in the trial court dockets, Comcast Corporation.

Over the course of 29 pages, this response methodically set forth the basis of Berger's claims against Comcast.[4]

Berger alleged he had contacted Comcast on November 16, 2015, seeking residential cable and internet services. Comcast informed Berger it was recording the phone conversation, and that this recording would be available for Comcast's later review. After speaking with Comcast's agent, the parties entered into an oral contract with the following terms. Comcast would provide cable, high-speed internet, and landline phone services to Berger for a twenty-four month term. The cable agreement included several subscription channels, such as HBO and the NFL RedZone Channel. Berger would pay Comcast, before any required taxes, $125 per month for this service. Additionally, Berger was required to pay a one-time, $10 installation fee. Berger retained a right to rescind the agreement for 30 days. Berger also agreed that if he cancelled the contract, he would owe Comcast a cancellation fee. This fee would start at $240 and be reduced by $10 for every month the contract was honored.

Comcast agreed to send an e-mail memorializing the terms of the oral agreement to Berger's existing e-mail address within six hours. Comcast informed Berger it would create an e-mail address for Berger on its domain

---

[4] Given the procedural posture of this appeal, the factual history is taken entirely from Berger's motion to compel discovery. As noted, Comcast has not yet filed a verified document setting forth the facts from its perspective.

servers even if Berger did not want one. Berger requested Comcast not send the confirmation e-mail to the Comcast e-mail address, but rather to his existing e-mail address. Comcast agreed to do so.

The next day, Berger sent an e-mail to Comcast from his work domain server. This e-mail set forth the terms Berger understood to have been part of the oral agreement. Comcast responded with a form e-mail, thanking Berger for his interest in the agreement, and promising to reply within 24 hours. However, Comcast did not reply.

One week later, Berger discovered he could not watch the NFL RedZone Channel. He immediately contacted Comcast and spoke to a service representative. Once again, Comcast informed him the phone call was being recorded for "quality assurance purposes."

The representative told Berger the NFL RedZone Channel was not included in his agreement, and he would be charged an additional amount if he wished to receive this channel. Berger objected to any additional fees, as he believed he was entitled to the channel under the oral agreement. Comcast's representative activated the channel, indicated she lacked the authority to address Berger's complaint, and assured him that he would receive a call from Comcast within the week. In response, Berger requested that Comcast honor its promise to send him an e-mail memorializing the oral agreement. Comcast's representative claimed she lacked the authority to address this issue, and transferred Berger to a different agent.

The new agent claimed he would change Berger's contact information to reflect his personal e-mail address and not the e-mail address that had been created on Comcast's domain servers. All future e-mails would be sent to Berger's personal e-mail address. Berger did not receive the promised phone call. He did, however, receive an e-mail from Comcast with a link to Comcast's website. The linked page contained a list of terms included in Comcast's agreement for services. The listed terms differed from the terms of the oral agreement.

In response to this e-mail, Berger again called Comcast. Once again, he was informed the conversation was being recorded. He told the service representative that the linked web page did not correspond to the terms set forth in his oral agreement. Berger demanded that the representative review the recording of the November 16th phone call to assess the terms of the oral agreement.

The customer service representative informed Berger he did not have the authority to address Berger's demands. However, he told Berger the recording would be reviewed by another employee, who would contact Berger after listening to it.

Approximately a week later, having received no communication from Comcast, Berger called again. This time, Berger recorded the phone conversation with an agent who identified herself as Amanda. Berger

requested that Amanda set forth the terms of the agreement as understood by Comcast.

Amanda indicated Berger's monthly fee would be $127.98, including taxes. Berger confirmed the fee as the rate Comcast had pledged for two years of service. Amanda responded: "Correct. And that is the rate for two years but that's only with the HBO and the Showtime at five dollars a month for six months and your DVR for free for twelve months."

Berger, perplexed by the inherent contradictions in Amanda's reply, asked Amanda to clarify the terms. Berger asserted that, after a long pause, Amanda acknowledged his complaint and replied:

> And that I understand but your monthly balance is going to be that way for two years. You do have a promotional period that we added on as a courtesy in reference to your contract, in reference to your HBO and Showtime. But that does fall off after six months.

Berger again objected that Amanda's statement did not conform to the terms of the oral agreement from November 16th.

Amanda responded by indicating the recording from the November 16th phone call had been reviewed. She claimed the recording indicated the oral agreement was for a six-month period on the price of the pay channels, and the term of the free DVR rental was one year. After Berger once again objected to this summary and requested that Amanda review the recording herself, Amanda stated, "[w]e can definitely go ahead and have the call pulled and listen to that phone call."

Berger requested that he be given the opportunity to listen to the recording as well. Amanda indicated she would check with her supervisor to arrange a three-way call to allow Berger to listen to the recording. Amanda then promised to call Berger with further information.

Two days later, a representative, whom Berger believed to be a regional manager of Comcast, called him. The regional manager confirmed that the November 16th phone call had been recorded, and was available for review. However, the Comcast representative admitted it had not been listened to yet.

The regional manager informed Berger he was in the process of resolving the dispute in Berger's favor without having to review the recording. He asserted he had every intention of continuing to resolve the dispute in good faith, but that he was not currently authorized to concede to Berger's demands. He promised Berger that Comcast would contact him in short order with a resolution of the dispute.

At this point, the 30-day rescission period was drawing to a close. Berger hand-delivered a letter to Comcast's Corporate Headquarters providing three options to Comcast before the end of the rescission period. First, produce the recording for Berger's review and grant a 10-day extension to allow Berger to review the recording. In the alternative, Comcast could acknowledge the terms of the oral agreement as set forth in Berger's November 17th e-mail. Finally, Comcast could rescind the contract itself. Berger indicated that if Comcast took no explicit action within five days, he would understand that it

had chosen to acknowledge the terms as set forth in his November 17th e-mail.

Three days later, he received a call from another Comcast customer service representative. During the conversation, Berger notified the Comcast representative that he had delivered his demand letter three days prior. The representative asked him to send a copy of the demand letter to a fax number in Comcast's legal department. Berger faxed a copy of the demand letter to the provided fax number, but did not receive any reply from Comcast. Four days later, he faxed and mailed a letter to Comcast entitled "New Account Agreement." He also submitted a payment of $135.00, consisting of the $125.00 first month fee and the $10.00 installation fee, to Comcast.

Comcast began sending billing statements to Berger, apparently indicating a balance due greater than $125.00 per month. However, Berger submitted timely payments of $125.00 per month in reliance on Comcast's failure to respond to his demand letter. This arrangement continued for three months without any further communication from Comcast. Then, on April 4th, Comcast suspended Berger's cable and internet service.

Berger called Comcast customer service to again discuss the dispute. Berger requested to speak with a manager, but was rebuffed. Berger informed the Comcast representative he was recording the conversation, and the representative immediately hung up. Berger called back and spoke to a different Comcast representative. This representative informed Berger that

Comcast would not honor the terms of the oral agreement as set forth in Berger's November 17th e-mail.

On April 8th, Berger hand-delivered another demand letter to Comcast. He requested Comcast honor the terms of the oral agreement. He gave Comcast ten days to respond to the demand letter. In the event Comcast did not respond, the letter stated that Berger planned to initiate litigation. He listed possible claims of breach of contract, fraud, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and sought compensatory and punitive damages.

Six days later, Walter Davis called Berger and left a voice message. Davis indicated Comcast desired to resolve the dispute without resorting to litigation. Berger's attempts to contact Davis were unsuccessful. Shortly thereafter, Berger made a prorated payment for the number of days he had service during the billing period. One day after making the payment, Berger filed the writ of summons.

On June 1st, Berger received a notice from a collection agency indicating Comcast had transferred his account for collection. Berger responded with a letter informing the collection agency that the debt was disputed. Berger also managed to reach Davis over the phone.

Pursuant to this phone conversation, Berger e-mailed a demand letter to Davis. In the letter, Berger demanded a payment of $5,242.48 to settle the dispute amicably. This amount reflected remuneration for Berger's time and

filing fees, as well as compensation for Berger's full release of any libel claims against Comcast. Berger indicated he would provide Comcast a week to respond to his demand before proceeding any further with litigation.

Shortly thereafter, Berger received a voice message from Cokiliar Smith. Smith identified herself as senior paralegal for Comcast's Executive Customer Relations Department. Smith asked Berger to give her a call regarding his June 1st demand letter.

When Berger contacted Smith, she professed she did not have the authority to address Berger's demands. She would simply be the new point of contact, and she would discuss the situation with her superiors. After her superiors reached a decision, she would contact Berger.

On June 13th, Berger received Smith's written reply. Comcast asserted it had disconnected Berger's services on April 29th, not the 4th. Comcast offered to "zero out" Berger's balance of $271.68 and refrain from any further collection activity.

Berger responded to Smith's letter immediately. He disputed several factual assertions made in Smith's letter, rejected Comcast's settlement offer, and updated his settlement demand to $7,816.48. He further indicated that he would be serving pre-complaint discovery requests upon Comcast in the near future.

At a case management conference on July 14th, Berger hand-delivered his discovery requests to Comcast's attorney. A little over a month later, Comcast provided its answers to Berger's written interrogatories.

An understanding of the rules governing written interrogatories is necessary to provide context for Berger's dissatisfaction with Comcast's response. Answers to written interrogatories must be verified. **See** Pa.R.C.P. 4006(a)(1). Verification involves an assertion that the factual contents of the answers are "supported by oath or affirmation or made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities." Pa.R.C.P. 76.

Thus, verification may be accomplished in two ways. The answer may be made under "oath or affirmation before a notary or other person authorized to administer oaths." **Id**., **Explanatory Comment**. Or, the statement may contain language that "it is made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities." **Id**.

We set forth in full Comcast's "VERIFICATION," signed by Smith:

I, Cokiliar Smith, hereby verify that the statements made in the Responses of Defendant, Comcast Cable Communications Management, LLC, to Plaintiff's Pre-Complaint interrogatories are based upon information which I have furnished to my counsel and information which has been gathered by my counsel. The language contained in the response is that of counsel and not mine. I have read the response and to the extent that the statements therein are based upon information I have given to my counsel, they are true and correct to the best of my knowledge, information and belief. To the extent that the contents of the response are that of counsel, I have relied upon counsel in making this Verification.

- 11 -

There is no indication this statement was given under oath administered by a notary.

The answers themselves proved less than satisfactory to Berger. Importantly, Comcast denied it was "aware" of any recordings from any of the phone calls between Berger and its representatives. As a result, he sent an e-mail to Comcast's attorney, asking for clarification of Comcast's position regarding the existence of the recordings.

Comcast's attorney responded with her position that Comcast's answers spoke for themselves, and no supplement was necessary. Intrigued, Berger asked if this meant "Comcast [was] stipulating to the fact it never made any such recording of our oral agreement …? Because if [so, then] you are right, this motion [to compel further discovery] would be a waste of time and I can move on to drafting my Complaint." Comcast's attorney responded simply, "Comcast will not be making such stipulations."

Berger's answer to the rule to file a complaint encompassed a demand for an order compelling further discovery from Comcast. Comcast did not respond to this comprehensive answer to its rule to file complaint. Rather, as noted, it filed a praecipe to have a judgment of *non pros* entered against Berger on November 8th. A week later, Berger filed his petition to open the judgment. The trial court denied Berger's petition, opining that Berger was required, under Rule 237.3(a), to attach a copy of his complaint to his petition to open.

With this factual and procedural background in mind, we turn to the merits. We review a court's decision to deny a petition to open a judgment of *non pros* for an abuse of the court's discretion. ***See Banks v. Cooper***, 171 A.3d 798, 801 (Pa. Super. 2017). An abuse of discretion occurs where the decision is manifestly unreasonable, clearly arbitrary, capricious, motivated by partiality or undue prejudice, or fails to correctly apply the law. ***See Gondek v. Bio-Medical Applications of Pa., Inc.***, 919 A.2d 283, 286 (Pa. Super. 2007). However, "[t]his [C]ourt has repeatedly held that a trial court's legitimate interest in controlling its docket should not unnecessarily infringe upon a litigant's right to a trial." ***Faison v. Turner***, 858 A.2d 1244, 1247 (Pa. Super. 2004).

Rule 3051 provides the framework for having a judgment of *non pros* opened or stricken. ***See*** Pa.R.C.P. 3051. To open a judgment of *non pros*, the petition must establish three conditions. First, the petition must be timely filed. ***See id***., at (b)(1). Second, the petition must set forth a "reasonable explanation or legitimate excuse" for why the judgment was entered. ***Id***., at (b)(2). Finally, the petition must establish the plaintiff has a meritorious cause of action. ***See id***., at (b)(3).

Rule 237.3 creates a safe harbor for putative plaintiffs. The safe harbor provides that if the petition is filed within ten days of the entry of judgment, it need only establish that the complaint sets forth a meritorious cause of action to establish a right to relief. ***See id***., at (b)(1). "Rule 237.3 does not

alter the law of opening judgments as reflected in Rule 3051(b)[;] it presupposes that a petition to open filed within the ten-day period is timely or prompt and that a reasonable explanation or excuse for the delay exists." **Simmons v. Luallen**, 763 A.2d 810, 812 (Pa. 2000) (citation omitted).

Here, the trial court focused on subsection (a), which requires that "[a] petition for relief from a judgment of *non pros* … shall have attached thereto a copy of the complaint … which the petitioner seeks leave to file." Pa.R.C.P. 237.3(a). Since Berger did not attach a complaint to his petition, but rather a comprehensive list of factual allegations and legal claims in support of a motion to compel pre-complaint discovery, the court ruled it was prohibited from granting Berger relief under Rule 237.3. Also, the court ruled that Rule 237.3's requirements superseded and replaced the requirements of Rule 3051.

This was a misapplication of the law. Rule 237.3 does not replace Rule 3051. **See Simmons**, 763 A.2d at 812. It merely provides for a streamlined analysis if the petition is filed within 10 days of the entry of judgment. **See id**. "If a judgment of *non pros* is entered by the prothonotary pursuant to Rules 1037(a) or 1659 for a plaintiff's failure to file a complaint, then Rules 3051 **and** 237.3 govern the petition for relief." **Kruis v. McKenna**, 790 A.2d 322, 326 (Pa. Super. 2001) (footnote and citations omitted; emphasis in original). Here, judgment was entered pursuant to a praecipe filed by Comcast under Rule 1037(a).

As Berger concededly did not comply with the mandates of Rule 237.3, the general provisions of Rule 3051 apply. *See Horwath v. DiGrazio*, 142 A.3d 877, 882 (Pa. Super. 2016) (concluding Rule 237.3 only displaces Rule 3051 to streamline a petition to open filed within ten days after the entry of judgment and that a petition filed outside the parameters of Rule 237.3 falls under Rule 3051).

We therefore assess Berger's petition under the requirements of Rule 3051. Berger's petition to open was timely filed. *See Banks* (ordering a remand for a hearing on whether appellant's explanation for failing to appear at trial was reasonable when petition was filed seven days after judgment was entered). *See also* Pa.R.C.P. 237.3.

And, he has set forth a reasonable explanation for his failure to file a complaint. Comcast's answers to Berger's pre-complaint interrogatories clearly fail to comply with Rule 4006(a)(1). The verification is insufficient as a matter of law. Berger is entitled to a properly verified answer to his interrogatories before he is required to file a complaint.

Finally, the detailed allegations of fact contained in his response to Comcast's rule to file, if proved, are certainly sufficient to establish at least a claim for breach of contract. Thus, Berger's petition satisfied all three requirements set forth by Rule 3051. The court abused its discretion in refusing to open the judgment. This conclusion renders Berger's remaining

claims moot. We therefore reverse and remand this matter to reinstate this motion.

Order reversed. Case remanded for proceedings consistent with this memorandum. Application for permission to file request for publication denied. Application for ancillary prohibition denied. Jurisdiction relinquished.

Judge Olson joins the memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/4/18